UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**RICO BOLES**,

                Plaintiff,

      v.

**PAUL BILLECI, Addictions Treatment and Cognitive Behavioral Services Mgr.; GARRETT LANEY, (CRCI) Super; ELIZABETH LACARNEY, (CRCI) Security Mgr., PETER WOLNY, Release Counselor (CRCI); DARCEY BAKER, Release Counselor (CRCI); RICHARD JIMINEZ, West Care Mgr.; JEN OLSEN, West Care Program Mgr.; GERALD TODD FLYNN, West Care Counselor; CHRIS MESSINA, Professional Behaviorist**,

                Defendants.

Case No. 6:14-cv-00511-KI

OPINION AND ORDER

KING, Judge:

Plaintiff, previously an inmate at Columbia River Correctional Institution ("CRCI") during the time relevant to his allegations, brings this civil rights proceeding pursuant to 42 U.S.C. § 1983.  Currently before the court are a Motion for Summary Judgment filed by defendants Darcey Baker, Paul Billeci, Elizabeth LaCarney, Garrett Laney, and Pete Wolny (hereinafter the "State defendants") (ECF No. 47), a Motion for Summary Judgment filed by Gerald Todd Flynn, Richard Jiminez, and Jen Olsen (hereinafter the "West Care defendants") (ECF No. 61), and a Motion for Summary Judgment filed by plaintiff (ECF No. 77).  All of the defendants have treated plaintiff's Motion for Summary Judgment as a response to their motions for summary judgment, rather than a motion in its own right.  I agree that plaintiff did not intend to seek summary judgment; rather, he intended to respond to the arguments made by defendants in their motions for summary judgment.  For the following reasons, I grant the defendants' motions for summary judgment and dismiss this action.

## FACTS

Plaintiff pleaded guilty to seven counts of Encouraging Child Abuse in the Second Degree, three counts of Delivery of a Controlled Substance to a Minor, and one count of Felon in Possession of a Firearm.  Plaintiff was sentenced to serve 216 months in custody.[1]

This action arises out of plaintiff's removal from the West Care Alternative Incarceration Program ("AIP").  I previously dismissed plaintiff's Complaint, First Amended Complaint, and Second Amended Complaint.  I then dismissed all but one of the claims plaintiff alleged in his

---

[1]Plaintiff's arguments regarding purported *Brady* violations and any compulsion he felt to enter a guilty plea when facing the threat of a mandatory minimum sentence are irrelevant to the claims he raises here.

Page 2 - OPINION AND ORDER

Third Amended Complaint. Accordingly, plaintiff's third claim for relief, alleging he was removed from the AIP in retaliation for complaining about racial discrimination, is the only claim I permitted to proceed against the remaining defendants.[2]

While housed at Snake River Correctional Institution ("SRCI"), plaintiff complained about a racist comment made by a canteen worker. At plaintiff's request, ODOC reassigned him to a different workstation. Plaintiff filed a discrimination complaint on October 15, 2012.

Plaintiff was admitted into the AIP on January 2, 2013. The AIP is "'[a] highly structured corrections program that includes intensive interventions, rigorous personal responsibility and accountability, physical labor, and service to the community." OAR 291-062-0110(1). Pursuant to the rules governing the program, if an inmate completes the requirements of the program (including the short-term transitional leave component) to the ODOC's satisfaction, he shall be released into the community on post-prison supervision. OAR 291-062-0160(2)(a)(A), 291-062-0170(1). The functional unit manager or designee has the discretion to remove an inmate from the program. OAR 291-062-0150(1). When an inmate is removed for a program failure, "the inmate will be notified in writing of the reason(s) for the removal decision, and the opportunity for administrative review of the decision." OAR 291-062-0150(6)(a).

While plaintiff was enrolled in the AIP, plaintiff received a response to the discrimination complaint he had previously filed while housed at SRCI. He was unhappy with the response and filed a Notice of Tort on March 7, 2013. Either "during this time" or "shortly thereafter," plaintiff discussed his discrimination complaint and criticized West Care and ODOC

---

[2] I dismissed Chris Messina, a professional behaviorist who visited the AIP, because plaintiff failed to allege any facts to support a reasonable inference that Messina was personally involved in the decision to remove him from the program. Order 5, ECF No. 33.

for being unprepared to address these issues. Third Am. Compl. 5; Pl.'s Mot. for Summ. J. Ex. D, at 6.

The State defendants present evidence that as early as April 2013 they were concerned about plaintiff's being ready for release. In any event, plaintiff had his first exit interview on June 4, 2013, after which the committee agreed plaintiff was not ready for release and should have a second exit interview in 30 days. Plaintiff concedes that during this first exit interview, he said he felt he should not be designated as a sex offender because he had no actual, physical contact with any victim. Plaintiff had his second exit interview on July 18, 2013. At that time, the committee determined plaintiff met the criteria for release.

Several events occurred after plaintiff's second exit interview, and after the committee determined plaintiff could be released, which I set forth below. On July 25, 2013, the committee reversed its decision to release plaintiff early. It also removed him from the AIP. Plaintiff was informed about this news.

A written explanation was delivered to plaintiff in mid-August 2013. In that explanation, the following was explained:

> July 25, 2013-DOC release counselor Pete Wholny expressed concern that client is actively grooming women while engaged in the program as evidenced by clients telephone conversations. The phone calls also confirm staff concern that client is not taking accountability for his crime. The following are pieces of conversations that were monitored through the DOC telmate system.
>
> 6/l 7/13: This was a conversation between client and a lady he calls from lndiana several times a week. Based on the phone conversations she is currently diagnosed with cancer. This conversation occurred after clients initial exit interview when he was told he was being extended in the program. 'I just had an exit interview that went bad. I guess I was minimizing ..... I said I didn't feel a person who doesn't have physical contact should be called a sex offender and that

they should have a separate designation. It was the wrong thing to say ..... viewing material is not the same as raping or molesting.'

       7/11/13: This conversation took place between client and his brother. Client has met a new person through the website writeaprisoner.com. The new person he is writing is a woman from Germany. He is writing this person in addition to having a wife in Australia and calling a woman in Indiana several times a week. Client 'you emailed my girl?' Brother 'She is sending you a picture.' Client 'I got it yesterday ... She is 61 and she looks good, amazing.' Later in the conversation client says 'she understands my charges .... and over there it is nothing. Same with my Australian girl it is nothing.'

       7/18/13: Conversation between client and the women [sic] from Indiana. Client 'I talked to my PO it was pretty interesting.' Indiana 'How do you feel about having a female?' Client 'I would rather it be a male ... I was able to tell her my fears and thinking errors ... I felt I did okay ... There are some stipulations that seem horrible to me. I'm not someone who is going to offend or re-offend .... yon made a mistake in your life. I did a crime that doesn't mean I'm a criminal.'

       7/23/12: Conversation between client and the women [sic] from Indiana after he met with treatment and DOC staff about a possible program removal. Client 'Today and tonight I need you to be positive for me. I'm going through a struggle .... People I'm incarcerated by I feel aren't even clear about what my incident was ... try to get them to see it wasn't this but it's this.'

July 30, 2013- Client was brought into Westcare staff room to be asked about the website and contact with other females around the world. Client stated he was unaware that his contact with multiple women could be viewed as predatory. Client was asked why he believes this could be alarming to staff. Client stated he did not know. Client then maintained he did not take pictures of underage girls that he is in prison for, but only sold them, saying it was his son who took the pictures, contrary to police reports. MDT staff and Westcare staff challenged client to consider his answers and his accountability and be prepared to answer why he is in prison and why his actions in the last two weeks are alarming to those that would be releasing him. Client agreed.

August 1, 2013- Preliminary Counselor Todd Flynn was overseeing morning meeting as counselor of the day and was accompanied by a female guest, Chris Messina, observing the AIP program as a professional behaviorist. After the meeting client raced up to guest and introduced himself to her in a suave, aggressive manor [sic] comparing the guest to beautiful rock star PJ Harvey. Guest was noticeably unnerved. Counselor then took guest on a tour of CRCI and returned to the unit about 20 minutes later and went to AmeriCorps office to

> introduce her to the resident volunteer and found client using volunteer to look up PJ Harvey on the computer so he could print out a picture of her. Guest told counselor she was alarmed and felt uncomfortable to a degree that she compared her feeling to when she was sexually harassed by a college professor. MDT staff and prison management met and agreed client was too much of a risk to release. MDT staff and Westcare staff agreed the behavior of the morning and the incidents on the phone tapes where [sic] convincing enough evidence to consider client a risk to society. Team also felt that 8 months of programing had not proven to change client behavior and that more time was a waste. MDT and Westcare staff agreed to remove client from the program.

Decl. of Darcey Baker Attach. 4, at 2-3.

Plaintiff alleges he was removed from the AIP, despite the fact that he successfully completed the program on July 18, 2013, in retaliation for conduct protected by the First Amendment.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." *Nicholson v. Hyannis Air Service, Inc.*, 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

A First Amendment retaliation claim requires plaintiff to show (1) he engaged in a protected action; (2) defendants took adverse action against him; (3) a connection exists between the protected conduct and the adverse action; (4) the adverse action chilled the plaintiff's exercise of his First Amendment rights or otherwise harmed him, and (5) there was no legitimate penological reason for the adverse action. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009); *Rhodes v. Robinson*, 408 F.3d 559, 568 n.11 (9th Cir. 2005).

All of the defendants concede plaintiff filed a discrimination complaint (the "protected action").[3] They also concede they reversed their decision to release plaintiff early and removed him from the AIP (the "adverse actions"). These actions resulted in harm to plaintiff since his removal from the AIP resulted in his spending an additional 2.5 years in prison.

Defendants argue, however, that there is no material issue of fact to support the notion that they took the adverse action because plaintiff filed a discrimination complaint (the third factor). Defendants also assert that plaintiff cannot show the absence of a legitimate penological rationale for defendants' actions (the fifth factor).

---

[3] In his brief, plaintiff attempts to shift the focus from the allegations in his complaint–defendants' adverse action as a result of his discrimination complaint–to an argument that his statements to the various women on the telephone were protected by the First Amendment, and his approaching Messina was protected by the First Amendment, such that he could not be punished for making those statements. *Cf.* Third Am. Compl. 5 *with* Pl.'s Mot. for Summ. J. 5. This is not a claim he alleged in any of his complaints. In any event, a prisoner's First Amendment rights (assuming any are implicated by this set of facts) are limited by the "legitimate penological interests" of the prison system, which I discuss below. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Page 7 - OPINION AND ORDER

I.      Causation

Plaintiff must demonstrate that "the 'substantial' or 'motivating' factor behind the [defendants'] conduct" was the fact that plaintiff filed a discrimination complaint. *Brodheim*, 584 F.3d at 1271 (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)); *see also Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013) (must have evidence that "desire to chill [plaintiff's] speech was a but-for cause of . . . allegedly unlawful conduct"). Accordingly, plaintiff must "'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [defendants'] intent'" in revoking his release and removing him from the AIP. *Brodheim*, 584 F.3d at 1271 (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

Defendants point to the events relayed in the August memorandum they provided to plaintiff after they revoked his release and removed him from the AIP. To sum up those events, plaintiff engaged in several telephone calls with several different women, which was viewed by his counselor as grooming behavior. At his July 30 meeting, staff felt plaintiff was not self-aware about his reasons for interacting with multiple women, and that he was not forthcoming about the conduct underlying his conviction. Finally, staff were concerned about plaintiff's interaction with Messina on August 1.

Defendants have established an absence of evidence to support plaintiff's retaliation claim. As a result, the burden–which is "not a light one"–shifts to plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Plaintiff "must show more than the mere existence of a scintilla of evidence," and he "must do more than show there is some 'metaphysical doubt' as to the material

Page 8 - OPINION AND ORDER

facts at issue." *Id.* Plaintiff must identify evidence from which a jury could reasonably conclude he is entitled to a verdict in his favor.

Plaintiff offers evidence that (1) he discussed racial discrimination in the AIP sometime in March 2013, and that defendants knew about his discrimination complaint and expressed surprise by plaintiff's diligence in pursuing his claim; (2) he had ten years of clear conduct when he entered the AIP and his likelihood of re-offending was very low; (3) he successfully completed his second exit interview; (4) the women with whom he talked on the phone disagreed that they were victims of grooming; (5) plaintiff agreed his conviction was for possessing photographs of underage girls, and he never claimed that he purchased photographs; (6) plaintiff never aggressively approached Messina.

Courts recognize that rarely is there direct evidence of intent; plaintiff's case is no exception. Circumstantial evidence may suffice if it is evidence of motive. Such evidence typically falls into one of three categories: "'(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual.'" *McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)).

Here, plaintiff experienced an incident of racial discrimination at another institution. Plaintiff asked to be reassigned, a request which ODOC granted. Plaintiff disclosed this incident, and his having filed a tort claims notice about the incident, during his participation in the AIP at CRCI around March 2013. Thus, eight months after the initial event, and about four months after plaintiff raised racism as an issue in the AIP, defendants reversed their decision to release

Page 9 - OPINION AND ORDER

plaintiff early and removed him from the AIP. However, timing alone is insufficient; there must be additional evidence to support an inference of retaliatory motive or intent. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Here, assuming the conduct is sufficiently close in time to the adverse action, plaintiff offers no other evidence to support his claim that defendants took the action they did as a result of plaintiff's protected conduct. *See Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 646 (9th Cir. 2004) (suggested 13-month lapse too long); *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003) (rejecting "bright-line rule about timing of retaliation").

For example, plaintiff's discussion of racial discrimination around March 2013, and staff members' surprise about his diligence, is insufficient evidence of retaliatory motive. This evidence merely demonstrates defendants knew of the protected conduct, but it does not show they opposed it. *McCollum*, 647 F.3d at 882 (knowledge alone is insufficient as a matter of law); *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 753 (9th Cir. 2010) (circumstantial evidence must be specific to overcome summary judgment). Plaintiff provides a declaration of another inmate, Gino Mattei, who asserts he was a member of the West Care AIP and remembered the "racial disturbance" during which plaintiff complained West Care and ODOC were not equipped to tackle the problem of racism. He remembers defendant Todd Flynn, a West Care Counselor, "seemed to take issue with [plaintiff's] comments and defend the staff." Pl.'s Mot. for Summ. J. Ex. D, at 7. Even if defendant Flynn's comments "seem[ing]" to take issue with plaintiff's comments, and defending staff, is evidence of opposition to plaintiff's protected conduct, Mattei was not housed at CRCI during these events. Nordyke Decl. Attach. 1, at 3. I do not consider his declaration.

Page 10 - OPINION AND ORDER

Finally, plaintiff has presented no evidence that the reasons defendants gave for their adverse action were false. *McCollum*, 647 F.3d at 882. Indeed, plaintiff does not dispute that all of the events and conversations reported in the August 2013 memorandum actually occurred; he merely disputes that they should have been used to revoke his release and remove him from the program. For example, he disputes that he approached Messina aggressively, including offering a second affidavit from Mattei in which that inmate reports plaintiff said nothing disrespectful or inappropriate to Messina, and a declaration from Alec Weinstein who reports that he was present during the "alleged incident"–perhaps with Messina–and that plaintiff was respectful and never out of line. These offerings are irrelevant as they simply reflect another interpretation of an interaction which indisputably occurred, but which defendants and *Messina herself* found concerning.

Ultimately, plaintiff does not dispute that he failed his first exit interview–because he did not believe he was required to register as a sex offender–that he talked on the telephone with multiple women, and that he approached Messina, commented on her appearance, and was caught downloading and printing an image of the celebrity he thought Messina looked like. In short, plaintiff's evidence of retaliatory motive comes down to timing and defendants' knowledge of his criticism of racial discrimination. He has no direct evidence nor strong, specific circumstantial evidence of retaliatory motive. Thus, there is no evidence from which a fact-finder could infer that a substantial or motivating factor for defendants' decision to revoke plaintiff's release and remove him from the AIP was plaintiff's protected conduct. To the contrary, no reasonable juror could find that defendants acted in retaliation of plaintiff's protected conduct.

II.     Legitimate Penological Justification

Plaintiff must show that the adverse action "'did not reasonably advance a legitimate correctional goal.'" *Brodheim*, 584 F.3d at 1271-72 (quoting *Rhodes*, 408 F.3d at 568)). In assessing whether a proffered legitimate penological interest is reasonably related to a regulation which infringes on a prisoner's constitutional right, the following factors must be considered:

> First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether the other factors tilt in its favor. In addition, courts should consider three other factors: the existence of "alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the absence of ready alternatives" available to the prison for achieving the governmental objectives.

*Id.* at 1272 (quoting *Shaw v. Murphy*, 532 U.S. 223, 228 (2001) and *Turner v. Safley*, 482 U.S. 78 (1987)).

Defendants contend there is no evidence–and therefore no genuine issue of material fact–to support a conclusion that they acted without any legitimate penological purpose. They underscore that the AIP is intended to "promote rehabilitation during incarceration and reduce the risk of continuing criminal conduct when the inmate is returned to the community." OAR 291-062-0100(3). In addition, the functional unit manager is charged with ensuring program resources are properly utilized. OAR 291-062-0150(1). Defendants concluded plaintiff's conduct did not comport with these goals, and that he used resources which might be better directed elsewhere, justifying revocation of plaintiff's release and his removal from the program. Defendants also insist they were required to take the actions they did in order to preserve internal

security since plaintiff's interactions with Messina threatened the safety and internal order of the facility.  See *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003) (internal security is "perhaps most legitimate of penological goals").  Defendant Baker, a correctional counselor, testified the decision to remove plaintiff from the AIP "had nothing to do with [his] filing a racial discrimination complaint.  Instead, the decision to remove was based on the risk he posed to society and other concerns[.]"  Baker Decl. ¶ 24.

Plaintiff highlights his low risk of re-offending, his completion of the AIP, and the fact that he was initially granted release.  In addition, he argues the conduct defendants were concerned about was innocent–referring to letters submitted by the women with whom he was in telephone contact disputing that they felt "groomed"–and his interactions with Messina did not pose a risk of safety to the visitor or the program.

In evaluating defendants' reasons, I must avoid "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'"  *Pratt*, 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 482 (1995)).  Instead, I must "afford appropriate deference and flexibility" to defendants.  *Id.*  Defendants' actions in revoking plaintiff's release and removing him from the AIP were supported by "some evidence," as set forth in the August memorandum.  See *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985)).  Additionally, their decision was rationally and logically connected to a desire to protect society from an inmate whom they viewed as continuing to pose a risk to society.  Plaintiff's conversations with multiple women, the language he used to refer to some of those women, and his interaction with Messina, could be viewed by his counselor and others as grooming behavior, which tended to show his risk to

society and his failure to accept accountability for the crimes he was convicted of. In sum, I find plaintiff has failed to demonstrate that defendants' actions did not advance a legitimate penological goal.

## CONCLUSION

Based on the foregoing, defendants' Motions for Summary Judgment [47, 61] are granted. Plaintiff's Motion for Summary Judgment [77] was intended to be a response to the defendants' motion and it is terminated. The case is dismissed with prejudice.

IT IS SO ORDERED.

DATED this  15th  day of July, 2016.

    /s/ Garr M. King
Garr M. King
United States District Judge